# In the United States Court of Federal Claims

No. 09-108 T

(Filed March 13, 2014)

* * * * * * * * * * * * * * * * * * * * * * *

AMERGEN ENERGY CO., LLC by and    *
through EXELON GENERATION CO.,    *
LLC, tax matters partner,    *
   *
         *Plaintiff*,    *   Tax; Sealing of Judicial
   *   Records.
          v.    *
   *
THE UNITED STATES,    *
   *
         *Defendant*.    *

* * * * * * * * * * * * * * * * * * * * * * *

*Terri L. Mascherin*, Chicago, IL, for plaintiff.  *John J. Hamill* and *Kaija K. Hupila*, Chicago, IL, of counsel.

*Cory A. Johnson*, United States Department of Justice Tax Division, with whom were *Kathryn Keneally*, Deputy Assistant Attorney General, *David I. Pincus*, Chief, Court of Federal Claims Section, *Mary M. Abate*, Assistant Chief, *S. Starling Marshall*, Trial Attorney, Washington, DC, for defendant.

———————————————

## OPINION AND ORDER

———————————————

Now pending before the court is plaintiff's Motion to Maintain Certain Filings under Seal Pursuant to Protective Order.  In its motion, which has been fully briefed, plaintiff requests an order preventing the disclosure of portions of various exhibits and deposition testimony which were provisionally designated as confidential during discovery pursuant to a blanket protective order and thereafter

filed with the court under seal in connection with the parties' cross-motions for summary judgment.  For the reasons set forth below, plaintiff's motion is denied.

## BACKGROUND

A detailed description of the factual background and procedural history of this case is provided in *Amergen Energy Co. v. United States*, 113 Fed. Cl. 52 (2013) (*Amergen I*).  The court will summarize below only those facts most pertinent to the motion currently before the court.

This is a readjustment of partnership items case under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), codified at 26 U.S.C. §§ 6221-6234 (2012).  Plaintiff is AmerGen Energy Company, LLC (AmerGen), by and through Exelon Generation Company, LLC (Exelon), AmerGen's tax matters partner.  In its complaint filed under seal on February 20, 2009, AmerGen sought to include in its tax basis certain decommissioning liabilities it assumed when it acquired three nuclear power plants in 1999 and 2000.

In resolving the parties' cross-motions for summary judgment with respect to each of AmerGen's claims, the court addressed only the threshold legal issue of whether, under the Internal Revenue Code (IRC or Code), AmerGen may include decommissioning liabilities in the cost bases of the nuclear power plants it acquired in 1999 and 2000.  In its opinion – issued under seal on September 17, 2013, and filed publicly on October 8, 2013 – the court answered that question in the negative.[1]  *Amergen I*, 113 Fed. Cl. at 70-73.

Despite the court's decision on the merits of AmerGen's claims, disputes remain concerning the proper treatment of discovery materials filed with the court in connection with the parties' cross-motions for summary judgment.  Those disputes center on a protective order entered by the court during discovery in this case pursuant to Rule 26(c) of the Rules of the United States Court of Federal Claims (RCFC).

---

[1]/ All references in this opinion to the Internal Revenue Code (IRC) point to the 2012 version of Title 26 of the United States Code.

AmerGen initially sought entry of a protective order on May 3, 2010. Although the government did not oppose plaintiff's request for a protective order, the court rejected the proposed order as unworkable and requested that the parties propose a modified version of the court's standard protective order used primarily in procurement protest cases. The court ordered the parties to confer and jointly file a proposed protective order that would meet their respective needs and also address the need for a public record of this case. *See* Order of May 5, 2010. After failing to reach agreement on appropriate adaptations to the court's standard protective order, the parties subsequently submitted two proposed orders for the court's consideration. On August 13, 2010, the Court entered a blanket protective order which incorporated portions of each party's proposed protective order.

The protective order adopted by the court allows the parties to designate information as confidential for discovery purposes, and sets forth a procedure by which the parties may object to each other's confidentiality designations and present any unresolved disputes about such designations to the court. Protective Order ¶ 2. The order defines "protected information" as "sensitive and nonpublic technical, commercial, financial, personal, trade secret or government information contained in . . . (a) any document . . . produced, filed, or served by a party to this litigation; or (b) any deposition, sealed testimony or argument, declaration, or affidavit taken or provided during this litigation." *Id.* ¶ 1. Protected information properly designated as confidential "may be used solely for the purposes of this litigation," *id.* ¶ 3, and may be disclosed only to specified persons, *id.* ¶ 5. In addition, the protective order sets forth procedures by which the parties may file documents containing protected information with the court under seal to be followed by the filing of unsealed but redacted versions of such documents, *id.* ¶¶ 7-9, and by which the parties may present any unresolved disputes concerning redactions to the court for resolution, *id.* ¶ 9(d).

During discovery in this case, the government objected to many of AmerGen's confidentiality designations as beyond the scope of the protective order. *See* Def.'s Resp. Ex. C. The parties, after failing to reach agreement with respect to the propriety of plaintiff's confidentiality designations, initially proposed presenting their dispute to the court before filing their motions for summary judgment. *See* Joint Status Report dated March 23, 2012. The parties subsequently reconsidered that procedure, however, and suggested that the sequence be reversed – *i.e.*, that the parties first complete briefing of their

respective motions for summary judgment and thereafter seek resolution of any remaining disputes regarding confidentiality designations. *See* Joint Status Report dated March 30, 2012. Pursuant to this agreed-upon procedure, the parties filed their cross-motions for summary judgment, along with numerous exhibits, under seal, after which AmerGen filed its pending motion to seal.

The court issued its opinion under seal on September 17, 2013. Pursuant to paragraph 4 of the ordering language in that opinion, the parties were directed to identify proprietary or confidential material in that opinion subject to redaction on the basis that the material was protected. The parties notified the court that no redactions were necessary. *See* Joint Status Report dated October 3, 2013. The court therefore issued a public version of its opinion on October 8, 2013 which differed from the sealed version only with respect to the publication date.

## DISCUSSION

In its motion, AmerGen seeks to prevent the disclosure of information contained in exhibits and deposition testimony designated as confidential during discovery and filed with the court under seal in connection with the parties' cross-motions for summary judgment. AmerGen does not seek to seal all of the information filed in connection with the parties' cross-motions; rather, plaintiff seeks to "redact" from the public record a subset of the exhibits and deposition testimony filed. *See* Pl.'s Mot. at 14. AmerGen divides this subset of exhibits and testimony into six "categories" which the court describes in detail below. *See* Pl.'s Mot. at 3-11 & Ex. B1; Pl.'s Reply at 8-15 & Ex. 2. In support of its motion to seal, AmerGen offers the declarations of two Exelon employees: Jeffrey Dunlap, Manager of Spent Fuel and Decommissioning; and David Leckie, Tax Manager for Audit and Appeals. *See* Pl.'s Mot. Exs. B2-B3. Mr. Dunlap and Mr. Leckie both assert that the exhibits and deposition testimony identified in AmerGen's motion contain information that is "financially and commercially sensitive and non-public." Pl.'s Mot. Exs. B2 ¶ 5, B3 ¶ 5.

The government objects to AmerGen's motion in its entirety, arguing that "AmerGen has failed to demonstrate that there are compelling reasons to seal evidence that would outweigh the common law and First Amendment rights of access to this Court's records." Def.'s Resp. at 9.

4

The court's analysis begins, as it must, with recognition of the strong presumption in favor of public access to court proceedings. *In re Violation of Rule 28(d)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1978)); *see also Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (citing *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9 (1st Cir. 1998), and *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993)).  This presumption applies to materials submitted to the court in all civil adjudicatory proceedings, including materials submitted in support of or in opposition to motions for summary judgment.  *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006) ("[D]ocuments submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches . . . ."); *Rushford v. New Yorker Magazine*, 846 F.2d 249, 252 (4th Cir. 1988) ("Because summary judgment adjudicates substantive rights and serves as a substitute for a trial, we fail to see the difference between a trial and the situation before us now." (citing cases)); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 661 (3d Cir. 1991) (*Westinghouse*) (stating that the presumption of public access applies to all materials filed in connection with a motion for summary judgment) (citations omitted); *Pratt & Whitney Canada, Inc. v. United States*, 14 Cl. Ct. 268, 273-74 (1988) (citing *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982), and *In Re Coordinated Pretrial Proceedings*, 101 F.R.D. 34, 42-43 (C.D. Cal. 1984) (*Coordinated*)).  The exhibits and testimony AmerGen seeks to redact from the public record, all of which were filed with the court in connection with the parties' cross-motions for summary judgment, are therefore judicial records subject to the common law presumption of public access.

The presumption of public access to judicial proceedings and records, although strong, "'is not absolute.'"  *In re Violation of Rule 28(d)*, 635 F.3d at 1356 (quoting *Nixon*, 435 U.S. at 598).  The United States Supreme Court has stated that the decision regarding access to judicial records is "one best left to the sound discretion of the trial court . . . in light of the relevant facts and circumstances of the particular case."  *Nixon*, 435 U.S. at 599.  In exercising its discretion in this regard, this court must weigh the private interests advanced by the parties against the public's interest in access to judicial proceedings.  *In re Violation of Rule 28(D)*, 635 F.3d at 1356-57 (quoting *Nixon*, 435 U.S. at 602); *see also Baystate*, 283 F. App'x at 810 (remanding to the trial court to conduct the requisite balancing of private and public interests).

Access to judicial records has been denied where, for example, disclosure of such records might harm a litigant's competitive standing by revealing trade secrets or other confidential business information. *In re Violation of Rule 28(d)*, 635 F.3d at 1356 (citing *Nixon*, 435 U.S. at 598); *see also Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013) ("One factor that weighs in favor of sealing documents is when the release of the documents will cause competitive harm to a business."); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (stating that compelling reasons sufficient to outweigh the public's interest in disclosure of court records "exist when such court files might have become a vehicle for improper purposes, such as the use of records to . . . release trade secrets") (citations and internal quotation marks omitted); *Westinghouse*, 949 F.2d at 662 (recognizing that denial of access to judicial records may be proper when such records contain confidential business information that might harm a litigant's competitive standing) (citation omitted). Accordingly, in deciding which, if any, of AmerGen's proposed redactions are appropriate, the court must balance the public's interest in access against any putative private interest in maintaining the confidentiality of the information in question, including AmerGen's interest in avoiding the disclosure of information which could give its competitors an unfair advantage in the marketplace.

In balancing the competing public and private interests at play in this dispute, the court is mindful that the United States Court of Appeals for the Federal Circuit has stated that "'the ordinary showing of good cause which is adequate to protect discovery materials from disclosure cannot alone justify protecting such material after it has been introduced at trial.'" *In re Violation of Rule 28(D)*, 635 F.3d at 1358 (quoting *Poliquin*, 989 F.2d at 533). To establish good cause for a protective order to prevent the disclosure of discovery material pursuant to RCFC 26(c), a party must demonstrate that specific prejudice or harm will result if no protective order is granted. *Id.* at 1357-58 (citation omitted);[2] *Forest Prods. Nw., Inc. v. United States*, 62 Fed. Cl. 109, 114 (2004) (*Forest Products*) ("A party establishes good cause by specifically demonstrating that 'disclosure will cause a

---

[2]/ Although the Federal Circuit in *In re Violation of Rule 28(D)* was concerned with the application of Federal Rule of Civil Procedure 26(c), that rule is nearly identical to RCFC 26(c). This court therefore refers in this opinion to cases interpreting both rules.

clearly defined and serious injury.'" (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995))), *aff'd*, 453 F.3d 1355 (Fed. Cir. 2006).

By contrast, a party seeking to prevent disclosure of information submitted as evidence in dispositive judicial proceedings, whether at trial or in connection with a motion for summary judgment, must demonstrate compelling reasons for keeping such information out of public view. *In re Violation of Rule 28(D)* at 1358 (stating that "an even stronger showing of prejudice or harm may be required to warrant limitations on disclosure" of information actually introduced at trial); *see also Miller-Holzwarth, Inc. v. United States*, 44 Fed. Cl. 153, 154 (1999) (recognizing the "compelling justification" standard applicable to motions to prevent disclosure of judicial records) (citations omitted); *Black v. United States*, 24 Cl. Ct. 461, 464 (1991) (distinguishing between discovery materials, which "themselves are not subject to the common law right of access," and court documents, which can be sealed only upon a "showing of a compelling justification or the need to protect trade secrets") (citations omitted); *Pratt & Whitney Canada*, 14 Cl. Ct. at 274 (same) (citations omitted).[3]

AmerGen advances two arguments in an apparent attempt to avoid having to demonstrate compelling reasons for the redactions it seeks. First, plaintiff suggests that the court's protective order, by allowing the parties to designate information as confidential and to file such information with the court under seal, settles the issue of whether confidential information may be permanently sealed. *See* Pl.'s Reply at 4-5. Plaintiff's assertions in this regard are without merit.

---

[3]/ Other circuits have likewise noted the distinction between discovery materials and judicial records. *See, e.g.*, *Kamakana*, 447 F.3d at 1180 ("A good cause showing will not, without more, satisfy a compelling reasons test. Different interests are at stake with the right of access than with Rule 26(c); with the former, the private interests of the litigants are not the only weights on the scale. Unlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default. This fact sharply tips the balance in favor of production when a document, formerly sealed for good cause under Rule 26(c), becomes part of a judicial record.") (citations and internal quotation marks omitted); *Rushford*, 846 F.2d at 252 (noting that "discovery, which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court" (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986)))

Blanket or umbrella protective orders, such as the one entered in this case, are frequently employed by this court and others to facilitate discovery in complex cases. *E.g.*, *Jicarilla Apache Nation v. United States*, 60 Fed. Cl. 413, 414 (2004); *Rice v. United States*, 39 Fed. Cl. 747, 749-52 (1997); *Speller v. United States*, 14 Cl. Ct. 170, 175-77 (1988); *see also Cipollone v. Liggett Group*, 785 F.2d 1108, 1122 (3rd Cir. 1986).  However, such orders "'should not substantively expand the protection provided by Rule 26(c)[] or countenanced by the common law of access.'"  *Lugosch*, 435 F.3d at 126 (quoting *Coordinated*, 101 F.R.D. at 43-44); *see also Kamakana*, 447 F.3d at 1179, 1183 (concluding that "[a]lthough the magistrate judge expressly approved and entered the [blanket] protective order, the order contained no good cause findings as to specific documents that would justify reliance by the United States" and, therefore, "the claimed reliance on the order is not a compelling reason that rebuts the presumption of access") (citations and internal quotation marks omitted).  Accordingly, the presumption of access to court records is not rebutted merely because the court has previously entered a blanket protective order.  *See, e.g.*, *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136, 1138 (9th Cir. 2003) (applying the "compelling reasons" standard to a party's opposition to motions to unseal documents previously filed under seal pursuant to a blanket protective order, and holding that non-movant could not reasonably rely upon the order to "hold these records under seal forever") (citations omitted).

Indeed, as previously noted, the protective order entered in this case expressly contemplates the court's involvement in resolving disputes as to the designation of confidential information and the sealing and/or redaction of documents filed with the court.  *See* Protective Order ¶¶ 2, 9(d).  As both parties acknowledge, the court has yet to resolve the remaining disputes regarding the propriety of AmerGen's confidentiality designations and proposed redactions.  For the court to grant AmerGen's motion solely because the information AmerGen seeks to redact from the public record was provisionally designated as confidential pursuant to a blanket protective order would be to improperly "'abdicate [the court's] responsibility . . . to determine whether filings should be made available to the public.'"[4]  *In re Violation of Rule 28(d)*, 635 F.3d at 1358 (quoting *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996)).

---

[4]/  The court also rejects AmerGen's related argument, based upon this court's decision in *Sikorsky Aircraft Corp. v. United States*, 112 Fed. Cl. 313 (2013), that the government, in (continued . . .)

AmerGen's second argument is that the exhibits and testimony it seeks to redact from the public record "are largely irrelevant to the Court's ultimate ruling on a primarily legal question concerning application of [IRC] § 461(h)." Pl.'s Reply at 5. Plaintiff's argument in this regard is not entirely clear. AmerGen appears to suggest that the weight of any presumption favoring public access to judicial records diminishes when such records do not form the basis of a determination on the merits. The court finds this argument to be similarly unpersuasive.

In support of its argument, AmerGen cites to the Federal Circuit's recent decision in *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1226 (Fed. Cir. 2013). *See* Pl.'s Reply at 5-6. In *Apple*, both parties argued on appeal that the district court had abused its discretion in refusing to redact portions of various documents filed as exhibits to pre- and post-trial motions. 727 F.3d at 1223-28. With regard to the parties' "detailed product-specific financial information, including costs, sales, profits, and profit margins" contained in exhibits filed in connection with the parties' pre-trial motions, the Federal Circuit noted that "none of the documents [containing the financial information at issue] were introduced into evidence" and, "[t]hus, the financial information at issue was not considered by the jury and is not essential to the public's understanding of the jury's damages award." *Id.* at 1226. Because the particular financial information at issue was not necessary to the public's understanding of the case, the court concluded that the public's interest in accessing this information was negligible and was outweighed

---

opposing permanent redaction of the information identified in AmerGen's motion, must demonstrate "changed circumstances that would warrant departure from the procedure that the Court already established" in its protective order entered on August 13, 2010. *See* Pl.'s Reply at 5 (citing *Sikorsky*, 112 Fed. Cl. at 316). In *Sikorsky*, this court characterized the government's motion to unseal virtually all of the sealed portions of the trial record as a motion to modify a previously entered protective order, and concluded that "no showing of . . . changed circumstances ha[d] been made" to justify modifying the protective order. 112 Fed. Cl. at 316. The court finds *Sikorsky* to be inapposite because the protective order at issue in that case had been narrowly drawn to shield information which the court had already concluded would cause substantial competitive harm if made publicly available. *Id.* at 317. Here, by contrast, the court has yet to assess whether any of the information identified in AmerGen's motion is deserving of protection from disclosure.

by the parties' "strong interest in keeping their detailed financial information sealed." *Id.*

AmerGen's reliance upon *Apple* is misplaced in this case. That decision, aside from being non-precedential in this circuit insofar as it applies the law of the regional circuit in which the district court sat (there, the Ninth Circuit), is factually distinguishable. Unlike in *Apple*, where *none* of the information subject to the parties' motions to seal had been introduced to the jury at trial, *all* of the information that AmerGen seeks to redact from the public record was filed with the court as attachments to the parties' cross-motions for summary judgment.[5]

AmerGen has cited no legal authority holding that the presumption of public access is rebutted or diminished where, as here, a court resolves a plaintiff's claims on purely legal grounds without consideration of any of the allegedly protected information before the court. Nor has the court located any such legal authority. Moreover, plaintiff's argument appears to be contrary to the weight of authority on this issue. *See, e.g.*, *United States v. Kravetz*, 706 F.3d 47, 58 (1st Cir. 2013) (rejecting the notion that the presumption of public access turns on whether the documents at issue "actually played a role in the court's deliberations" (citing *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987))); *Kamakana*, 447 F.3d at 1179 ("[T]he strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments.") (citations omitted); *Lugosch*, 435 F.3d at 123 (finding error in the district court's suggestion that "different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving the motion," and stating that "'[i]f the rationale behind access is to allow the public an opportunity to assess the correctness of the

---

[5]/ Neither the Ninth Circuit nor the Federal Circuit has squarely addressed the issue of whether the public's right to access to judicial documents is diminished if a court has not cited those documents in a ruling on the merits. Furthermore, the Ninth Circuit, whose law the Federal Circuit was applying in *Apple*, does not appear to have identified any distinction, for the purposes of the presumption of public access, between dispositive motion exhibits submitted *and* cited versus those submitted *but not* cited. *See, e.g.*, *Kamakana*, 447 F.3d at 1179 ("[T]he strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments." (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136, 1138 (9th Cir. 2003), and *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999))).

judge's decision . . . documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision'" (quoting *Coordinated*, 101 F.R.D. at 43)); *cf. Westinghouse*, 949 F.2d at 661 (concluding that "papers filed in connection with a motion for summary judgment are not entitled to be shielded from public access merely because the district court denied the motion rather than granted it"). Accordingly, AmerGen must show compelling reasons to overcome the strong presumption in favor of access with respect to the information identified in its motion.

With these overarching principles in mind, the court now turns to an analysis of the six categories of information AmerGen seeks to redact from the public record of this case. As explained below, the court concludes that AmerGen has failed to satisfy even the less stringent good cause standard under RCFC 26(c), let alone the more arduous compelling reasons standard for the sealing of judicial records, because AmerGen fails to explain the specific harm that will result from disclosure.

## I.      "Financial and Business Planning Information"

The first category of information AmerGen seeks to protect, which AmerGen labels "financial and business planning information pertaining to its 1999-2000 plant acquisitions and other prospective business ventures," consists of portions of deposition testimony provided by AmerGen's financial analysts and other personnel involved in the acquisitions, as well as certain exhibits from those depositions which were attached as exhibits to the parties' cross-motions for summary judgment. *See* Pl.'s Mot. at 3-5 & Ex. B2 (Dunlap Decl.) ¶ 6(a); Pl.'s Reply at 12-14. Those exhibits include copies of the purchase agreements whereby AmerGen acquired the nuclear power plants at issue in this lawsuit; internal memoranda describing AmerGen's due diligence and financial assumptions with respect to the proposed purchases; and an affidavit by Adam Levin, Exelon's Director of Spent Fuel and Decommissioning, describing AmerGen's cost estimates with respect to the proposed purchases. *See* Pl.'s Mot. at 3-5 & Ex. B2 (Dunlap Decl.) ¶ 6(a).

Relying upon Mr. Dunlap's declaration, AmerGen asserts that these materials are confidential because they include "internal discussions and strategies,

including financial and performance analyses, that reflect Exelon's (and AmerGen's, whose tax rights Exelon invokes here) internal considerations and assessments of its cost structures, business opportunities, and market situations." Pl.'s Mot. at 4 (citing Pl.'s Mot. Ex. B2 (Dunlap Decl.) ¶ 6(a)). Plaintiff claims that if these materials were disclosed, AmerGen "would run the risk of its competitors acquiring and potentially using its sensitive information to their competitive advantage." *Id.*

The government responds by arguing that AmerGen has not demonstrated compelling reasons to seal this information because AmerGen "fails to identify the specific business and financial information that it is concerned about, or the specific harm that would result from its disclosure." Def.'s Resp. at 13. The court agrees.

As noted *supra*, a party seeking protection under RCFC 26(c) must *specifically* demonstrate that discovery or disclosure will cause a clearly defined and serious injury. "[B]road allegations of harm, unsubstantiated by specific examples, are insufficient." *Estate of Rubinstein v. United States*, 96 Fed. Cl. 640, 647 (2011) (citing *Cipollone*, 785 F.2d at 1121, and *Forest Products*, 62 Fed. Cl. at 114); *Wall Indus., Inc. v. United States*, 5 Cl. Ct. 485, 487 (1984) ("[I]t is axiomatic that nebulous and conclusory allegations of confidentiality and business harm are insufficient to carry the movant's burden.") (citations omitted); 8A Charles Alan Wright et al., *Federal Practice & Procedure* § 2035, at 157-58 (3d ed. 2010). *A fortiori*, such allegations are insufficient to meet the more stringent compelling reasons standard required to rebut the presumption of public access with respect to judicial records.

Applying this standard, it is evident that AmerGen has not made the requisite particularized showing of harm to prevent disclosure of the "financial and business planning information" identified above. AmerGen simply provides a chart listing citations to exhibit numbers and testimony falling within this broad category of information, *see* Pl.'s Reply Ex. 2, and asserts that disclosure of these materials may reveal AmerGen's "internal considerations and assessments of its cost structures, business opportunities, and market situations," *see* Pl.'s Mot. at 4. Yet AmerGen makes no effort to identify *specific* information in these materials that would cause *specific* harm to its competitive interests if publicly released. Moreover, the court is aware of no *per se* "internal operations" exception to the

presumed right of public access, and observes that such an exception would swallow the presumption of public access in most cases. *See, e.g.*, *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1035 (S.D.N.Y. 1993) ("Internal corporate documents do not automatically merit protective orders, nor is a party entitled under Rule 26(c) to keep documents under seal in order to shield the party from negative publicity.").

Furthermore, as defendant notes, the age of the information in this category, nearly all of which came into existence before the year 2000, weighs in favor of requiring disclosure even if the court were to accept as true AmerGen's speculative assertions that the materials at issue contain confidential commercial information otherwise deserving of protection. *See* Def.'s Resp. at 13 (citing *United States v. Exxon Corp.*, 94 F.R.D. 250, 251-52 (D.D.C. 1981), and *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 891 (E.D. Pa. 1981)).  In general, information may lose its confidential nature once it becomes stale.  *Avtel Servs., Inc. v. United States*, 70 Fed. Cl. 173, 191 (2006) (citing cases), *appeal dismissed*, 501 F.3d 1259 (Fed. Cir. 2007); *see also Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987) ("Even assuming that the information Schmid seeks to protect generally falls within the category of confidential commercial information, only a speculative showing of potential harm has been made.  The bulk of the documents sought are over ten years old."); *Zenith*, 529 F. Supp. at 891 ("An attempt to show that disclosure will indeed work a competitive disadvantage might be undermined if the information sought to be protected were stale."); *United States v. Int'l Bus. Machs. Corp.*, 67 F.R.D. 40, 49 (S.D.N.Y. 1975) (*IBM*) (denying a motion to maintain under seal testimony and exhibits containing non-current information).

Although the application of this general rule is necessarily case-specific, it is clear that vague and speculative allegations of injury from the disclosure of years-old information are not sufficient to overcome the strong presumption favoring public access.  *See, e.g.*, *Deford*, 120 F.R.D. at 654 ("While staleness of the information sought to be protected is not an absolute bar to issuance of an order, it is a factor which must be overcome by a specific showing of present harm." (citing *Exxon*, 94 F.R.D. at 252, *Zenith*, 529 F. Supp. at 891, *Parsons v. Gen. Motors Corp.*, 85 F.R.D. 724, 726 (N.D. Ga. 1980), and *IBM*, 67 F.R.D. at 47-49).

AmerGen claims that "strategic planning that was relevant in the 1999-2000 era for these assets remains relevant today," *see* Pl.'s Mot. at 4, but it fails to demonstrate *how* the particular materials at issue reveal anything about its contemporary operations such that their disclosure would harm its competitive standing.  AmerGen has therefore failed to demonstrate either good cause or compelling reasons to justify non-disclosure of the "financial and business planning information" described above.[6]

## II.      "Tax Information"

The second category of information AmerGen seeks to protect, which AmerGen describes as "tax information" containing "tax advice, analysis and reporting," includes copies of AmerGen's tax returns for the years 2001 through 2003; private letter rulings by the Internal Revenue Service (IRS) as well as AmerGen's written requests for such rulings; internal memoranda and correspondence regarding tax and accounting matters; related deposition testimony provided by AmerGen personnel as well as AmerGen's tax and accounting advisers; an affidavit by David Leckie, Exelon's Tax Manager for Audit and Appeals, describing AmerGen's schedule of damages submitted to the court in connection with its motion for summary judgment; and two pages from the government's brief in support of its motion for summary judgment in which the government described the IRS private letter rulings obtained by AmerGen.  *See* Pl.'s Mot. at 5-6 & Ex. B3 (Leckie Decl.) ¶ 6(a); Pl.'s Reply at 10-12.

AmerGen asserts, in language taken nearly verbatim from Mr. Leckie's declaration, that "[t]hese materials are financially sensitive because they identify the advice and internal considerations and analyses that underlie Exelon's tax liabilities and accounting methodologies."  Pl.'s Mot. at 6 (citing Pl.'s Mot. Ex. B3 (Leckie Decl.) ¶ 6(a)).  Plaintiff elaborates that "[w]hile Exelon files its returns

---

[6]/ With respect to the purchase agreements identified above, the government opposes AmerGen's request to seal on the additional ground that AmerGen failed to designate the agreements as confidential during discovery.  *See* Def.'s Resp. at 13 n.12.  Defendant makes a similar argument with respect to other materials identified in AmerGen's motion.  *See id.* at 10-11.  However, as plaintiff correctly notes, the protective order provides that "[a] designation of confidential information may be made *at any time*."  Protective Order ¶ 2 (emphasis added); *see* Pl.'s Reply at 13.  AmerGen's decision to wait until now to seek protection for such documents is therefore immaterial.

with the [IRS], Exelon does not provide its internal analyses and advice to any parties with which it does not have a confidential arrangement, and Exelon keeps its tax returns confidential and does not make them available to the public at large." *Id.*  Nor, plaintiff claims, does it disclose the "underlying analyses and inputs that support its accounting and financial reporting disclosures." *Id.* AmerGen therefore contends that "[t]hese materials contain information that would be valuable to Exelon's competitors, including Exelon's valuation of its assets, power purchase agreement terms, and other proprietary information and strategic considerations underlying Exelon's business, tax, and financial planning." *Id.*

The government argues, first, that tax proceedings are "presumptively open" under IRC 6103(h)(4).  Def.'s Resp. at 14 (citing *Willie Nelson Music Co. v. Comm'r*, 85 T.C. 914, 919 (1985)).  However, as AmerGen notes, the plain language of that Code section contradicts defendant's argument.  *See* Pl.'s Reply at 11.  IRC 6103(a) provides that income tax "[r]eturns and return information shall be confidential" and shall not be disclosed except as statutorily authorized. Although IRC 6103(h)(4) permits the disclosure of such information "in a Federal or State judicial or administrative proceeding pertaining to tax administration," its language is permissive, not mandatory.  Therefore, the Code neither requires nor prohibits disclosure of tax returns or related information in tax proceedings such as these.  Instead, the same strong (but rebuttable) presumption of access applies in tax cases as applies in all other civil proceedings.  *See, e.g., Anonymous v. Comm'r*, 127 T.C. 89, 91 (2006); *Willie Nelson*, 85 T.C. at 919.

The government next argues that much of the tax-related information identified by AmerGen is already in the public domain and therefore is not confidential.  *See* Def.'s Resp. at 2-3, 14.  Specifically, defendant notes that the IRS private letter rulings, and AmerGen's written requests for such rulings, were filed publicly by AmerGen earlier in these proceedings in connection with AmerGen's motion to compel admissions by the United States.  *See id.* at 2-3.  The government also asserts that AmerGen already disclosed the tax advice it received in 1999 and 2000 in the body of its summary judgment briefs as well as attachments thereto.  *Id.* at 14; *see also id.* at 3 ("[AmerGen] wants to seal the non-privileged tax advice it received in 1999 and 2000.  How disclosure of this 14-year old advice – that was shared with third-parties long ago and confirmed by this Court – could now lead to serious injury is left unexplained." (citing *AmerGen I*, 113 Fed. Cl. at 56)).

15

AmerGen admits that it already disclosed several of the aforementioned IRS private letter rulings, as well as AmerGen's written requests for such rulings, and "agrees that the prior public filing of those materials . . . obviates the need for any further protection." Pl.'s Reply at 10. AmerGen therefore withdraws its request to seal those documents. *Id.* & Ex. 2 (revised chart of allegedly confidential materials). AmerGen maintains, however, that "there are still other [private letter ruling] materials on other issues and for other years in the summary judgment appendices that AmerGen believes should still be under seal." *Id.* at 10 n.6. AmerGen also asserts that its disclosure of "the bottom line" regarding the tax advice it received in 1999 and 2000 "does not mean that otherwise confidential documents conveying such advice somehow lose their protectable nature." *Id.* at 12.

Although the court acknowledges that a taxpayer may, in certain circumstances, lose any privacy interest in otherwise confidential tax information that is disclosed in court, the court need not resolve AmerGen's request to seal tax records on that basis. Instead, the court need only observe that, as with the "financial and business planning information" discussed above, AmerGen has made no attempt to *specifically* identify how disclosure of *particular* tax information will harm its competitive interests. As previously noted, broad and conclusory allegations of harm, unsubstantiated by specific examples, cannot establish good cause or compelling reasons to overcome the strong presumption in favor of public access, particularly where, as here, the information at issue came into existence years ago.

## III.   "Asset Retirement Information"

The third category of information AmerGen seeks to protect, which AmerGen describes as "asset retirement information" relating to "calculation of its asset retirement obligations for financial reporting purposes," includes internal memoranda, correspondence, and slide presentations describing AmerGen's calculation of its asset retirement obligations; related deposition testimony provided by AmerGen personnel; and four pages of the government's reply brief in support of its motion for summary judgment in which the government described AmerGen's calculation of its asset retirement obligations. *See* Pl.'s Mot. at 7-8 & Ex. B2 (Dunlap Decl.) ¶ 6(b); Pl.'s Reply at 14.

Relying again upon Mr. Dunlap's declaration, AmerGen claims that, in calculating annually its asset retirement obligations in accordance with public financial accounting standards, it "review[s] many potential scenarios for retiring assets, projecting the cash flows associated with each of those scenarios, and assess[es] the probability of each of those scenarios occurring." Pl.'s Mot. at 7. Plaintiff asserts that "the materials generated in those reviews contain extensive private and sensitive financial information that Exelon does not make public." *Id.* (citing Pl.'s Mot. Ex. B2 (Dunlap Decl.) ¶ 6(b)); *see also id.* at 8.

Defendant responds by noting that plaintiff's asset retirement obligations are calculated according to publicly promulgated financial accounting standards, and that "Exelon itself discloses its process for calculating these obligations in its publically filed 10-Ks." Def.'s Resp. at 15 & Exs. D-E (Forms 10-K for fiscal years 2003 and 2009). AmerGen, in reply, avers that it discloses the "ultimate result" of each year's asset retirement obligation calculation but does not disclose the "underlying workpapers and analyses that it prepares." Pl.'s Reply at 14.

Regardless of whether the "asset retirement information" identified by AmerGen has already been publicly disclosed, the court concludes that AmerGen has not made a particularized showing of harm necessary to prevent disclosure of this information. Although plaintiff alludes to "extensive private and sensitive financial information that Exelon does not make public," *see* Pl.'s Mot. at 7, it fails to specifically identify what this information consists of. In addition, AmerGen does not even attempt to explicate the specific harm that would befall it were such information to be disclosed. Instead, in its reply brief, AmerGen merely asserts that this information should be protected "for largely the same reasons as its financial planning information." Pl.'s Reply at 14. In so doing, AmerGen appears to expect the court to pinpoint such information by reviewing the hundreds of pages of exhibits and deposition testimony identified in plaintiff's motion. The court cannot, and will not, engage in such guesswork. In short, plaintiff has failed to demonstrate good cause or compelling reasons to prevent the disclosure of the "asset retirement information" described above.

## IV.   "Decommissioning Preparation and Planning Information"

The fourth category of information AmerGen seeks to protect, which AmerGen labels as "decommissioning preparation and planning information," includes internal memoranda, correspondence, and meeting minutes describing AmerGen's estimates of its potential decommissioning costs with respect to the nuclear power plants at issue, as well as related deposition testimony provided by AmerGen personnel and external decommissioning consultants. *See* Pl.'s Mot. at 8-9 & Ex. B2 (Dunlap Decl.) ¶ 6(c); Pl.'s Reply at 14-15.

Mr. Dunlap states in his declaration that these materials "pertain to Exelon's analysis of and preparations and plans for decommissioning its fleet of plants, including its funding preparations," none of which is generally shared with competitors. Pl.'s Mot. Ex. B2 (Dunlap Decl.) ¶ 6(c). Mr. Dunlap concludes that these materials are "sensitive because they address the company's business and financial strategies and considerations that would be used by a competitor to its advantage." *Id.* Relying upon Mr. Dunlap's declaration, AmerGen argues that "as with the similar category of asset retirement information, public disclosure of AmerGen's decommissioning preparation and planning information would be to its competitors' advantage." Pl.'s Mot. at 9.

The government argues, first, that this sort of information is "routinely publicly disclose[d]" to the Nuclear Regulatory Commission (NRC) pursuant to 10 C.F.R. § 50.75 (2013), and therefore is not confidential. Def.'s Resp. at 16. Defendant also contends that AmerGen has itself disclosed such information in its filings with the Securities and Exchange Commission as well as on its own website. *See id.* & Exs. F-G. Plaintiff, although conceding that it "might publicize some information regarding its decommissioning planning and estimates," argues that it does not publicize the "details and underlying documentation for its 'analysis of and preparations and plans for decommissioning its fleet of plants.'" Pl.'s Reply at 15 (quoting Dunlap Dec. ¶ 6(c)).

Regardless of whether the totality of the "decommissioning preparation and planning information" identified by plaintiff has already been publicly disclosed, the court must again conclude that plaintiff has not made a particularized showing of harm with respect to this information. Indeed, AmerGen makes no attempt to explain how disclosure of this information, most of which appears to have come into existence more than ten years ago, would harm its competitive standing, and instead simply incorporates the same arguments by reference as were made with

respect to the "financial and business planning information" discussed *supra*.  *See* Pl.'s Reply at 15.  The court has already found such arguments insufficient to demonstrate good cause or to establish compelling reasons to overcome the presumption of public access.

## V.   "Confidential Lawsuit Resolution Information"

The fifth category of information AmerGen seeks to protect, which AmerGen describes as "lawsuit resolution information" pertaining to a settlement of AmerGen's 2004 lawsuit against the Department of Energy (DOE) in connection with a contract for the disposal of spent nuclear fuel, includes a slide presentation concerning the details of the settlement whereby AmerGen was to receive reimbursement for spent nuclear fuel management costs; portions of the government's reply brief in support of its motion for summary judgment which describe the settlement; and related deposition testimony provided by AmerGen personnel.  *See* Pl.'s Mot. at 9-10 & Ex. B2 (Dunlap Decl.) ¶ 6(d); Pl.'s Reply at 8-9.

AmerGen argues, again relying upon Mr. Dunlap's declaration, that these materials contain confidential information because they set forth "the details of the reimbursement of certain spent nuclear fuel storage costs in connection with resolution of the DOE lawsuit."  Pl.'s Mot. at 10 (citing *id.* Ex. B2 (Dunlap Decl.) ¶ 6(d)).  Plaintiff asserts that "[t]he public disclosure of that information would be prejudicial both to AmerGen and DOE in that it would expose their private and sensitive commercial and financial information."  *Id.*

The government responds that these materials are not confidential because the settlement agreement does not contain a confidentiality clause.  Def.'s Resp. at 16.  Additionally, defendant argues that plaintiff has already disclosed the settlement's terms in publicly-filed financial statements as well as on plaintiff's counsel's website.  *Id.* at 16-17 (*citing id.* Exs. A (Form 10-K for fiscal year 2006), B (website describing the settlement)); *see also id.* at 3.

AmerGen admits that the settlement agreement "does not include the title 'confidential' or any similar term," but nevertheless asserts that the agreement itself forbids disclosure of its terms in the course of this litigation.  Pl.'s Reply at 9.  Without providing the court with a copy of the agreement, AmerGen purports to

quote from a certain provision of the agreement which allegedly provides that the agreement "shall not bind the parties, nor shall it be cited or otherwise referred to, in any proceedings, whether judicial or administrative in nature, in which the parties or counsel for the parties have or may acquire an interest, except as is necessary to effect the terms of the Agreement[.]"  *Id.* at 8.  AmerGen contends that this language "forbids AmerGen (and the United States) from even referring to [the settlement] in other lawsuits."  *Id.* at 8.  In contrast, plaintiff asserts that the above-quoted language "do[es] not forbid the type of non-litigation disclosures" made by plaintiff in its publicly-filed financial statements and on its counsel's website.  *Id.* at 9.

The court rejects AmerGen's request to seal materials relating to its settlement with DOE.  As an initial matter, the court is unable to assess the validity of AmerGen's claims with respect to the confidentiality of the settlement agreement itself because neither AmerGen nor the government has submitted the agreement to the court.  Yet even if the court were to accept AmerGen's assertions in that regard, they would have no bearing on the court's analysis because the information AmerGen seeks to seal is already in the public record.  Specifically, the court's unsealed opinion referred to the settlement and even cited the portions of the government's reply brief that AmerGen now seeks to seal.  *See Amergen I*, 113 Fed. Cl. at 58.  Plaintiff was afforded an opportunity to seek redaction of this reference but chose not to do so.  *See* Joint Status Report dated October 3, 2013 (advising the court that "no redactions need to be made to the Court's Opinion and Order to make it available as part of the public record; it can be unsealed").  Having made that choice, plaintiff cannot now be heard to argue that its 2004 settlement with DOE is somehow confidential.

Moreover, the court agrees with defendant that "AmerGen has not demonstrated any concrete, serious injury that would override the rights of public access" with respect to information concerning its settlement with DOE.  *See* Def.'s Resp. at 17.  The bulk of the material in this category appears to merely set forth basic facts concerning the settlement – facts which AmerGen itself has already disclosed.  And plaintiff has made absolutely no effort to specifically delineate the "private and sensitive commercial and financial information" it claims should be redacted, *see* Pl.'s Mot. at 10, nor has it explained how disclosure of such information would harm its competitive standing.  The court therefore

concludes that AmerGen has failed to demonstrate good cause or compelling reasons to prevent disclosure of the settlement information described above.

## VI.   "Technical Safety-Related Information"

The final category of information AmerGen seeks to protect, which AmerGen describes as "technical safety-related information" regarding the location of spent fuel pools in AmerGen's nuclear power plants, consists of seven lines of deposition testimony provided by Francis Seymore, one of AmerGen's decommissioning consultants. *See* Pl.'s Mot. at 10-11 & Ex. B2 (Dunlap Decl.) ¶ 6(e); Pl.'s Reply at 9-10.

Relying again upon Mr. Dunlap's declaration, AmerGen argues that "[t]estimony concerning the location of spent fuel pools is nonpublic, sensitive, technical information," the release of which "not only would reveal AmerGen's proprietary technical information, but . . . could also create a public danger." Pl.'s Mot. at 11; *see also id.* Ex. B2 (Dunlap Decl.) ¶ 6(e).

In response, the government asserts that this information is already in the public domain, and therefore is not confidential. *See* Def.'s Resp. at 17. As support for its argument, defendant submits a copy of a letter dated February 28, 2013 from Exelon to the NRC describing Exelon's plans with respect to the management of spent fuel pools at one of its power plants. *See id.* Ex. H. Defendant claims that this letter "is available to the public on the [NRC's] website" and "provid[es] considerably more detail about the . . . spent fuel pool . . . and its location" than does Mr. Seymore's deposition. *See* Def.'s Resp. at 17. The government also asserts that it has "confirmed with the NRC that the disclosure of the very general testimony submitted is not prohibited." *Id.*

In reply, AmerGen asserts that sealing the above-mentioned portions of Mr. Seymore's testimony "seems proper . . . because the actual location of the spent nuclear fuel pool does raise safety issues and really has nothing to do with AmerGen's claims or the government's defenses." Pl.'s Reply at 9-10. In AmerGen's view, sealing this testimony is the more prudent course in light of what AmerGen refers to as "an overall safety-based regulatory regime that espouses a policy of limiting access to information regarding the location of critical energy infrastructure." *Id.* at 10 n.5 (citing 18 C.F.R. § 388.113 (2013)).

21

Although the court finds it conceivable that disclosure of the precise location of spent nuclear fuel or similar radioactive waste could, in certain circumstances, pose a public danger sufficient to overcome the presumption of access,[7] the court nevertheless concludes that AmerGen has not demonstrated good cause or a compelling need to seal the specific portion of Mr. Seymore's testimony identified above.  As an initial matter, Mr. Seymore testified regarding AmerGen's spent nuclear fuel pools only in very general terms.  *See* Def.'s Mot. for Summary Judgment Ex. 32 at A01655 (noting that spent fuel at one plant is "isolated from most of the plant" and is "right in the middle of the building" at another plant).  AmerGen does not attempt to explain how disclosure of the general location of its nuclear fuel pools could present a current threat to public safety which could constitute a compelling reason to overcome the strong presumption of public access, particularly in light of AmerGen's previous public disclosure of far more detailed information concerning spent fuel pools at one of AmerGen's plants.

Furthermore, the court notes that AmerGen's reliance upon 18 C.F.R. § 388.113 is unavailing.  That section governs access to "critical energy infrastructure information," which is defined as "*specific* engineering, vulnerability, or *detailed* design information about proposed or existing critical infrastructure" that . . . (i) [r]elates details about the production, generation, transmission, or distribution of energy; (ii) [c]ould be useful to a person in planning an attack on critical infrastructure; (iii) is exempt from mandatory disclosure . . . ; and (iv) *[d]oes not simply give the general location of the critical infrastructure*."  18 C.F.R. § 388.113(a),(c)(1).  By its terms, therefore, 18 C.F.R. § 388.113 does not apply to Mr. Seymore's testimony concerning the general location of AmerGen's nuclear fuel pools.

---

[7]/ Several courts have recognized that a risk of physical harm can, in certain circumstances, be a compelling interest sufficient to overcome the presumption of public access.  *See, e.g.*, *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995); *United States v. Raffoul*, 826 F.2d 218, 226 (3d Cir. 1987) (stating "[t]he risk of physical harm (in this case death) is the best example one could imagine of an overriding interest"); *Ashworth v. Bagley*, 351 F. Supp. 2d 786, 789 (S.D. Ohio 2005) (recognizing that "the degree of danger to the petitioner or other persons mentioned in the materials" is an interest to be weighed in considering the common law right of access to judicial proceedings and documents) (citation omitted).

22

## CONCLUSION

Rather than articulate the specific prejudice or harm that will flow from disclosure of specific confidential or proprietary information, plaintiff has instead grouped hundreds of pages of exhibits and testimony into general categories and offered broad, vague, and conclusory generalizations with respect to these materials, all "for administrative efficiency." *See* Pl.'s Reply at 6.  This falls short of meeting plaintiff's burden to demonstrate good cause pursuant to RCFC 26(c), and cannot meet plaintiff's more stringent burden to demonstrate compelling reasons to overcome the strong presumption in favor of public access to these judicial records.  Plaintiff's motion is therefore denied.[8]

Having denied plaintiff's motion to maintain certain specified filings under seal, the court assumes that the parties have no further dispute as to the sealing or unsealing of judicial records in this case.[9]  The court therefore directs the Clerk's Office to unseal every sealed filing in this case on April 10, 2014.  Should the parties agree that some exception to the global unsealing of sealed filings in this case is warranted, the parties must jointly file a notice to that effect on or before April 3, 2014.  At the same time, the parties shall file, as separate docket entries, agreed-upon redacted versions of any sealed filing(s) that the parties agree should be excepted from the global unsealing of sealed filings in this case.

Accordingly, it is hereby **ORDERED** that

---

[8]/ The court also notes that AmerGen, in the conclusion to its motion, requests that the court "enjoin the United States from using AmerGen's sensitive and non-public commercial and financial business information except as permitted by the Protective Order." Pl.'s Mot. at 14. To the extent that this request could be deemed a request for injunctive relief that is separate from, and in addition to, AmerGen's requested redactions to the parties' summary judgment submissions, that request is denied because AmerGen identifies no legal basis for such relief.

[9]/ The court makes this assumption based upon the parties' joint status report of March 30, 2012, in which the parties described their agreement to present all disputes regarding AmerGen's confidentiality designations to the court after the completion of briefing on the parties' cross-motions for summary judgment.  This agreed-upon procedure, the parties then noted, was designed to narrow the materials under dispute.  *See* Joint Status Report dated March 30, 2012, at 2.  The court therefore assumes that the materials in dispute are limited to those identified in plaintiff's pending motion to seal.

(1)     Plaintiff's Motion to Maintain Certain Filings under Seal Pursuant to Protective Order, filed September 5, 2013, is **DENIED**;

(2)     The Clerk's Office is directed to **ENTER** final judgment in favor of defendant on Counts I-IV of the complaint, for the reasons stated in the court's opinion and order of September 17, 2013, as follows:

> IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that (i) the adjustments set forth in the Notices of Final Partnership Administrative Adjustment for AmerGen Energy Company LLC for tax years 2001, 2002 and 2003, dated November 24, 2008, are correct and sustained in full; and (ii) plaintiff's requests for adjustment of partnership items set forth in Counts I-IV of the complaint are denied;

(3)     The Clerk's Office is directed to **ENTER** final judgment on Count V of the complaint, pursuant to the parties' settlement and AmerGen's Tax Matters Partner's stipulation regarding Count V, as follows:

> IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that AmerGen is allowed as an adjustment to partnership items for tax year 2002 an additional $2,547,718 of deductions for prepaid insurance.  Together with the deductions claimed on its original return ($4,364,493), AmerGen is allowed a total of $6,912,211 of deductions for prepaid insurance for 2002;

(4)     Each party shall bear its own costs;

(5)     Unless otherwise directed by the court, the Clerk's Office is directed to **UNSEAL** docket entries 1, 52, 53, 56, 58, 91, 92, and 93 on **April 10, 2014**; and

(6)     In the event that the parties agree that some exception to the unsealing of the above-listed docket entries is warranted, the parties shall jointly **FILE** a **Notice** to that effect on or before **April 3, 2014**.  In addition,

24

on or before **April 3, 2014**, the parties shall jointly **FILE**, as separate docket entries, agreed-upon **Redacted Versions** of any sealed filing(s) that the parties agree should be excepted from the unsealing of the above-listed docket entries.


<u>/s/Lynn J. Bush</u>
LYNN J. BUSH
Senior Judge